**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Case No. 08-12651 (BLS) |
| | ) | |
| FRANCIS L. REEVES and, | ) | Chapter 13 |
| JERMESHA L. REEVES | ) | |
| | ) | |
| Debtors. | ) | **Docket Reference No.  4** |

**OPINION[1]**

Before the Court is the objection to plan confirmation filed
by eCAST Settlement Corporation, assignee of FIA Card Services
(aka Bank of America)("eCAST") in the chapter 13 case of Francis
and Jermesha Reeves (the "Debtors").  This case presents an issue
of first impression in this jurisdiction: whether a chapter 13
debtor's "disposable income," as determined by the Statement of
Current Monthly Income (Form B22C), is in all cases the same
monthly amount as his or her "projected disposable income" under
11 U.S.C. § 1325(b)(1)(B).  This issue has been extensively
litigated before other courts since the enactment of the
Bankruptcy Abuse Prevention and Consumer Protection Act of 2005
("BAPCPA"), and it has generated conflicting views among the
several courts of appeal that have directly considered it.

For the reasons stated below, the Court concludes that
"disposable income" as calculated by Form B22C is not the same as
"projected disposable income" at least in some instances,

---

[1]  This Opinion constitutes the findings of facts and
conclusions of law of the Court pursuant to Federal Rule of
Bankruptcy Procedure 7052.

including the case at bar.  Because the Debtors' chapter 13 plan

does not currently meet the statutory requirement that all of

their "projected disposable income" earned during the term of

their plan be used to pay their unsecured creditors, the

objection to plan confirmation will be sustained.

## BACKGROUND

On November 5, 2008, the Debtors filed a petition for relief

under chapter 13 of the Bankruptcy Code (the "Code").  They

timely filed a Statement of Current Monthly Income, otherwise

known as Form B22C, as required by several provisions of the

Code.  Debtors' Form B22C indicates that their annualized current

monthly income was $163,075.08 based on income they received

during the six-month period before filing.[2]  This figure is well

above the median income for a family of their size in Delaware.[3]

After deducting all allowed expenses and deductions from their

income, the Debtors' Form B22C shows "disposable income" of

$269.05 per month.

On November 5, 2008, the Debtors filed a chapter 13 plan

with the Court.  The Debtors' chapter 13 plan proposes to remit

to the Chapter 13 trustee $1,505.37 per month for sixty (60)

---

[2]    The Code expressly contemplates using income derived in
the six months before filing to calculate "current monthly
income."  See 11 U.S.C. § 101(10A)(A).

[3]    According to the Debtors' Form B22C, the Debtors'
household consists of six persons.  The median income for a
family of this size in Delaware is $89,885.00.

months, part of which will yield a distribution of approximately

seven percent to general unsecured creditors.  In so doing, the

plan proposes to pay all of the Debtors' "projected disposable

income," as the Debtors argue the term should be calculated, to

the Debtors' general unsecured creditors during the plan's five-

year applicable commitment period.[4]  As noted below, a chapter 13

plan cannot be confirmed over the objection of a party unless the

plan proposes to do this.

On January 12, 2009, eCAST filed an objection to the

proposed plan, contending that the Debtors improperly calculated

their "projected disposable income."  More specifically, eCAST

argues that the Debtors erred when they concluded that their

monthly "projected disposable income" is necessarily the same

amount as their monthly "disposable income."  eCAST contends, for

two reasons, that the Debtors' projected disposable income is

actually higher than the Debtors' disposable income, thus

requiring larger payments to be made to unsecured creditors under

the Debtors' proposed chapter 13 plan.  The first reason is the

Debtors deduct expenses pertaining to payments on a debt secured

by certain real property when calculating their projected

disposable income, even though Paragraph 4b of the Debtors' plan

---

[4]      Section 1325(b)(4) provides that the applicable
commitment period for above-median income debtors may not be less
than five years, unless the plan proposes to pay all general
unsecured creditors in full in a shorter period.  See 11 U.S.C. §
1325(b)(4).

states that this property will be surrendered, such that the

Debtors will not actually be paying this expense over the 60

months of the plan.  The second reason is similar.  eCAST argues

that the income portion of the Debtors' "projected disposable

income" is artificially low on account of the Debtors' failure to

take into account the increased income one of the Debtors started

receiving shortly before filing bankruptcy.

The Debtors respond that "projected disposable income" is

simply "disposable income" multiplied over the number of months

in a Debtor's chapter 13 plan, irrespective of whether the

numbers generated by the formula accurately reflect reality.

This matter has been fully briefed and argued.  It is ripe

for decision.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28

U.S.C. §§ 1334 and 157(a) and (b)(1).  Venue is proper in this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of

this matter constitutes a "core proceeding" under 28 U.S.C. §

157(b)(2)(L).

## DISCUSSION

If a creditor or Chapter 13 trustee objects to confirmation,

a proposed plan cannot be confirmed unless it provides "that all

of the debtor's projected disposable income to be received in the

applicable commitment period beginning on the date that the first

payment is due under the plan will be applied to make payments to unsecured creditors under the plan."   11 U.S.C. § 1325(b)(1)(B). Before BAPCPA was enacted in 2005, "disposable income" was defined as "income which is received by the debtor and which is not reasonably necessary to be expended ... for the maintenance and support of the debtor or a dependent of the debtor."   11 U.S.C. § 1325(b)(2)(A) (1994).   Generally speaking, prior to BAPCPA a debtor's disposable income was determined by subtracting the expenses listed on Schedule J from the income listed on Schedule I and, for purposes of determining whether a debtor was using all of his "projected disposable income" to fund a plan, the difference between Schedule I and J was multiplied by the proposed length of the debtor's plan.  See, e.g., In re Petro, 395 B.R. 369, 373-74 (6th Cir. BAP 2008) (contrasting pre- and post-BAPCPA methods of calculating "projected disposable income").

But BAPCPA changed the Code's definition of "disposable income" through amendments to section 1325(b).  Pursuant to these amendments, "disposable income" for above-median income debtors, such as the Debtors here, is "current monthly income,"[5] less specific expenses enumerated in chapter 7's means test

---

[5]      "Current monthly income" is defined in section 101(10A) of the Code as the average monthly income received by the debtor over the six-month period prior to his filing for bankruptcy relief.

provisions, located in sections 707(b)(2)(A) and (B) of the Code. See 11 U.S.C. § 1325(b)(2)(A), (b)(3).  The definition of "disposable income" for debtors with current monthly income at or below their state's median income also was changed.  Instead of subtracting these debtors' reasonably necessary expenses from their income, these expenses must now be subtracted from their "current monthly income."  BAPCPA did not change the calculation of "reasonably necessary expenses" for below-median income debtors, however.

This new definition of "disposable income" has led to much litigation over the meaning of "projected disposable income." The change also has now resulted in a disagreement among the three circuit courts that have been called upon to analyze the relationship of these two terms with each other.  Compare Maney v. Kagenveama (In re Kagenveama), 541 F.3d 868 (9th Cir. 2008), with In re Frederickson, 545 F.3d 652 (8th Cir. 2008), and In re Lanning, 545 F.3d 1269 (10th Cir. 2008).  It has been noted that court opinions addressing this issue in the last few years have generally fallen into one of three main lines of argument.  See Ned W. Waxman & Justin H. Rucki, Chapter 7 Bankruptcy Abuse: Means Testing is Presumptive, but "Totality" is Determinative, 45 Hous. L. Rev. 901, 925-27 (2008) (collecting cases and noting "[t]here are three lines of authority concerning the meaning of 'projected'" with regard to section 1325 of the Code).

The majority view construes "projected disposable income" as a forward-looking term that is calculated based upon a debtor's projected income at the time of plan confirmation, not the historical average income for the six months prior to filing the bankruptcy petition.  See, e.g., In re Purdy, 373 B.R. 142, 152 (Bankr. N.D. Fla. 2007).  In ascribing independent meaning to the word "projected," which modifies "disposable income," this approach uses the income and expense numbers on Form B22C as a starting point only.  In re Jass, 340 B.R. 411, 415 (Bankr. D. Utah 2006).  Courts embracing this view then adjust for substantial increases or decreases in the debtor's actual income or expenses when the disposable income figure on Form B22C "does not adequately represent the debtor's budget projected into the future."  Id. at 415-16.  That is, the majority view compels a court to look for changes in the income and expense categories that are used to calculate "disposable income" only.  By doing this, these courts give meaning to the new definition of "disposable income," but are not required to use numbers that it may know are grossly inaccurate.  The Courts of Appeal for the Eighth and Tenth Circuits have adopted this approach, in Frederickson and Lanning, respectively.

On the other hand, a number of courts, including the U.S. Court of Appeals for the Ninth Circuit in Kagenveama, give effect to the term "projected" by "multiply[ing] the net 'disposable

income' figure as calculated on Form B22C by the applicable

commitment period.  No more, no less."  In re Hanks, 362 B.R.

494, 499 (Bankr. D. Utah 2007).  A third view, adopted by only a

handful of courts, uses a debtor's actual income and expenses on

Schedules I and J, respectively, without even considering the

current monthly income and the expenses on Form B22C.  See, e.g.,

In re Hardacre, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006).

The question raised in this matter is one of statutory

interpretation; therefore, the Court's analysis is guided by

certain canons of statutory construction.  These canons mandate

that the Court begin its analysis with the language of the

statute itself.  Duncan v. Walker, 533 U.S. 167, 172, 121 S.Ct.

2120, 150 L.Ed.2d 251 (2001).  "[W]here ... the statute's

language is plain, 'the sole function of the courts is to enforce

it according to its terms.'"  United States v. Ron Pair Enters.,

Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)

(quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct.

192, 61 L.Ed. 442 (1917)); see also Conn. Nat'l Bank v. Germain,

503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)

("[I]n interpreting a statute a court should always turn first to

one, cardinal canon before all others.  We have stated time and

again that courts must presume that a legislature says in a

statute what it means and means in a statute what it says there.

When the words of a statute are unambiguous, then, this first

canon is also the last: 'judicial inquiry is complete.'" (quoting

Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66

L.Ed.2d 633 (1981))).  Moreover, "It is 'a cardinal principle of

statutory construction' that 'a statute ought, upon the whole, to

be so construed that, if it can be prevented, no clause,

sentence, or word shall be superfluous, void, or insignificant.'"

TRW Inc. v. Andrews, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d

339 (2001)(quoting Duncan, 533 U.S. at 174, 121 S.Ct. 2120).

     But, if "'the literal application of a statute will produce

a result demonstrably at odds with the intentions of its

drafters'" or if the language of the statute is unclear, courts

may resort to legislative history and "the intention of the

drafters."  Ron Pair, 489 U.S. at 242-43, 109 S.Ct. 1026 (quoting

Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102

S.Ct. 3245, 73 L.Ed.2d 973 (1982)); see also United States v.

E.I. DuPont De Nemours & Co. Inc., 432 F.3d 161, 169 (3d Cir.

2005) ("Where a statute's text is ambiguous, relevant legislative

history, along with consideration of the statutory objectives,

can be useful in illuminating its meaning." (citing Gen. Dynamics

Land Sys., Inc. v. Cline, 540 U.S. 581, 600, 124 S.Ct. 1236, 157

L.Ed.2d 1094 (2004) (examining "the text, structure, purpose and

history" of the relevant statute))).

     With these principles in mind, the Court concludes that the

language of section 1325(b) is anything but plain with regard to

9

how to define "projected disposable income."  The term "projected

disposable income" is left undefined, the ordinary meaning of the

word "projected" is not dispositive one way or the other, and the

language of section 1325(b) does not plainly compel the Court to

use the definition of "disposable income" as the definition of

"projected disposable income."  Accordingly, the Court must

consider not only the text of the new section 1325(b), but also

the legislative history accompanying it and the goals of Congress

in enacting BAPCPA.

The Court begins with the language of the statute.  Section

1325(b) states, in relevant part, that:

> (b)(1) If the trustee or the holder of
> an allowed unsecured claim objects to the
> confirmation of the plan, then the court may
> not approve the plan unless, as of the
> effective date of the plan ...

> (B) the plan provides that all of
> the debtor's projected disposable income to
> be received in the applicable commitment
> period beginning on the date that the first
> payment is due under the plan will be applied
> to make payments to unsecured creditors under
> the plan.

> (2) For purposes of this subsection, the
> term "disposable income" means current
> monthly income received by the debtor (other
> than child support payments, foster care
> payments, or disability payments for a
> dependent child made in accordance with
> applicable nonbankruptcy law to the extent
> reasonably necessary to be expended for such
> child) less amounts reasonably necessary to
> be expended ... .

11 U.S.C. § 1325(b).

The third view discussed above, which uses a debtor's actual income and expenses on Schedules I and J, respectively, without even considering the current monthly income and the expenses on Form B22C, is unconvincing.  This view fails to give any meaning to the new definition of "disposable income."  Instead, it calculates "disposable income" in exactly the same manner as was customary prior to BAPCPA.  Since it appears that Congress did not intend for this to be the case, the Court cannot adopt this view.  This leaves two competing approaches – the Kagenveama, or "multiplier" view, and the Frederickson/Lanning, or "forward-looking," view.

From a textual standpoint, courts embracing the "forward-looking" view contend that a distinction should be drawn between a debtor's "disposable income," which is calculated solely on the basis of historical numbers and regional averages, and a debtor's "projected disposable income," which necessarily contemplates a forward-looking calculation.  Frederickson, 545 F.3d at 659.  Forward-looking view proponents find support for this reading in section 1325(b)(1)'s language compelling the Court to evaluate a debtor's projected disposable income "as of the effective date of the plan."  11 U.S.C. § 1325(b)(1).  More specifically, they argue this language indicates Congress intended the courts to focus on the reality of a debtor's income and expenses on the

date of confirmation, not the date of filing.  Lanning, 545 F.3d

at 1279.  The forward-looking view also places great emphasis on

section 1325(b)(1)(B)'s language requiring that all "projected

disposable income to be received in the applicable commitment

period beginning on the date that the first payment is due under

the plan will be applied to make payments to unsecured creditors

under the plan."  11 U.S.C. § 1325(b)(1)(B) (emphasis added).

The phrase "to be received" speaks of the projected disposable

income that will be received in the future under a confirmed

chapter 13 plan, they reason.  To the extent that a debtor's

projected disposable income to be received during the life of

that debtor's chapter 13 plan varies from his or her pre-petition

"disposable income," the statute compels the court to use the

former when deciding whether to confirm a chapter 13 plan.  See

Lanning, 545 F.3d at 1280 (noting that "the forward-looking

approach gives effect to the phrase 'to be received in the

applicable commitment period,' which otherwise would be rendered

superfluous").

     By contrast, courts adopting the multiplier view offer

several textual arguments of their own.  The proponents of the

multiplier view argue that the use of the term "projected

disposable income" in section 1129(a)(15)(B) by reference to

section 1325(b)(2) – which provides the definition of "disposable

income" – shows that Congress intended "projected disposable

income" to have the same definition in individual chapter 11

cases as "disposable income" in chapter 13 cases.[6]  Therefore,

the multiplier view's proponents contend, "projected disposable

income" and "disposable income" in chapter 13 must also be the

same thing, because there is nothing to indicate that the

definition of "projected disposable income" in chapter 13 varies

from the definition used in chapter 11.  See Hon. Randolph J.

Haines, Chapter 11 May Resolve Some Chapter 13 Issues, 8 Norton

Bankr. L. Adviser 1, 2 (2007).  The proponents of the multiplier

view also argue that the "plain meaning of the word 'projected,'

in and of itself, does not provide a basis for including other

data in the calculation" of disposable income.  Kagenveama, 541

F.3d at 873.  The word "projected" in section 1325(b), they

argue, only means that "disposable income" should be multiplied

over the applicable commitment period.  Id. at 872 ("Reading the

statute as requiring 'disposable income,' as defined in

---

[6]     Section 1129(a)(15) states that a chapter 11 plan shall
be confirmed only if:

> (15) In a case in which the debtor is an individual and
> in which the holder of an allowed unsecured claim
> objects to the confirmation of the plan-- ...

>     (B) the value of the property to be distributed
> under the plan is not less than the projected
> disposable income of the debtor (as defined in section
> 1325(b)(2)) to be received during the 5-year period
> beginning on the date that the first payment is due
> under the plan, or during the period for which the plan
> provides payments, whichever is longer.

subsection (b)(2), to be projected out over the 'applicable commitment period' to derive the 'projected disposable income' amount is the most natural reading of the statute, and it is the one we adopt.").

The Court finds the textual arguments made in support of the "forward-looking" view more convincing.  The argument that "disposable income" in chapter 13 defines "projected disposable income" in chapter 11, and thus should also be used to define "projected disposable income" in chapter 13 because "projected disposable income" in chapter 11 and chapter 13 should mean the same thing, renders the word "projected" completely superfluous – it would essentially read it out of the statute.  Instead, the Court believes that the reference to the definition of "disposable income" in 1129(a)(15) provides the same starting point in chapter 11 that it provides in chapter 13.  That is, disposable income should be used as a starting point for the calculation of projected disposable income on the terms espoused by the forward-looking view.  The plain meaning of the word "projected" provides a basis for considering changes to the income or expense amounts used to calculate a debtor's disposable income.  Considering the language of section 1325(b) in the context of a statutory scheme that contemplates plan payments stretching five years into the future, the Court concludes that "disposable income" essentially sets forth the income and expense

categories the Court should consider in evaluating a chapter 13 plan, and "projected disposable income" represents what these categories will look like as they are "projected" into the future.

Moreover, the Court is convinced that adopting the forward-looking view also better serves the goals Congress clearly sought to advance when it enacted BAPCPA. Embracing the multiplier view may require courts to make decisions based on income and expense figures that all parties know are wildy inaccurate. For instance, where a chapter 13 debtor experiences a decrease in income in the six months before filing bankruptcy or shortly thereafter, such as where one spouse loses a job, the multiplier view would yield a "projected disposable income" figure that is artificially inflated. This phantom income could easily be large enough, in some instances, to compel chapter 13 debtors to make larger monthly payments than they can actually afford, thereby resulting in potential default and frustrating one of the longstanding goals of the Code – to give honest debtors a "fresh start."

In other instances, however, a chapter 13 debtor's projected disposable income would be inaccurately low under the multiplier view. This could occur in situations such as the instant case, where (i) a debtor receives an increase in income sometime during the six month period before bankruptcy or after filing the

15

bankruptcy petition, and/or (ii) where an above-median debtor

deducts payments toward a secured debt from their current monthly

income even though they intend to surrender the collateral.[7]

Accordingly, for all of the reasons stated above, this Court

concludes that "projected disposable income" is a forward-looking

term that is calculated based on a debtor's disposable income as

projected at the time of plan confirmation, not the historical

average income for the six months prior to filing the bankruptcy

petition.  The Court uses the income and expense numbers on Form

B22C as a starting point only.  The Court will then adjust for

substantial increases or decreases in the debtor's actual income

or expenses when the disposable income figure on Form B22C does

not adequately represent the debtor's budget projected into the

---

[7]    Once again, section 1325(b)(3) provides that the means
test expenses in sections 707(b)(2)(A) and (B) shall determine an
above-median debtor's reasonably necessary expenses in a chapter
13 case.  These include "all amounts scheduled as contractually
due to secured creditors in each of the 60 months following the
date of the petition."  11 U.S.C. § 707(b)(2)(A)(iii)(I).

Under the means test in chapter 7 cases, nearly all courts
allow a debtor to deduct amounts owed on account of such
indebtedness, even if he intends to surrender the collateral
after filing bankruptcy, because the debts are scheduled as
contractually due.  See Justin H. Rucki, Note, Looking Forward
While Looking Back: Using Debtors' Post-Petition Financial
Changes to Find Bankruptcy Abuse After BAPCPA, 49 Wm. & Mary L.
Rev. 335, 353-58 (2007) (collecting cases).  These courts then
will generally consider the debtor's reduced expenses under the
other way to test for bankruptcy abuse in chapter 7 cases – the
"totality of the circumstances" test.  Id. at 364-68.  But,
unlike several components of the means test, the totality of the
circumstances test is not incorporated into chapter 13.

future.   In doing so, however, the Court will only look to

changes in the income and expense categories that are used to

calculate "disposable income."

Applying this analysis to the present case, the Court finds

that the Debtors' plan does not propose to pay all of their

projected disposable income to their general unsecured creditors

during their five-year applicable commitment period.  This is the

case because the Debtors use their disposable income calculation

as their calculation of "projected disposable income."  The

Debtors calculate their disposable income properly, but their

projected disposable income is in fact significantly higher.  The

difference results from the fact that the Debtors' actual gross

income is nearly $3,000 more per month than the gross income

listed on their Form B22C, and because the Debtors deduct over

$800 per month for payment of a debt formerly secured by a second

home they have since surrendered.  After taking account of the

Debtors' actual income and expenses, the Debtors' projected

disposable income increases, and their proposed chapter 13 plan

must make a corresponding increase in its proposed monthly

payments to general unsecured creditors in order to be approved

by the Court.[8]  Accordingly, the objection to the plan is

---

[8]    Of course, the Court's ruling works both ways.  To the
extent the Debtors show that their income decreases before plan
confirmation, or their allowed expenses increase, the Court would
also consider these changes when calculating the Debtors'
"projected disposable income."

sustained.

## CONCLUSION

For the foregoing reasons, the Court concludes that the Debtors' chapter 13 plan fails to apply all of the Debtors' projected disposable income to payments to unsecured creditors during the applicable commitment period.  Because the plan cannot be confirmed without meeting this requirement, the objection to plan confirmation is sustained.

An appropriate Order follows.

BY THE COURT:

Dated: Wilmington, Delaware
       May 18, 2009                 _____
                                     Brendan Linehan Shannon
                                     United States Bankruptcy Judge